IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:10-CR-75-FL

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ELI STAFFORD, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to suppress evidence seized and statements given subsequent to a police stop and search of his vehicle (DE # 21). The government timely responded in opposition, and the matter was committed to United States Magistrate Judge James E. Gates for evidentiary hearing and issuance of a memorandum and recommendation ("M&R") pursuant to 28 U.S.C. § 636(b)(1)(B).

The magistrate judge recommends denying the motion to suppress. Defendant objected to that recommendation, and the government responded. In this posture, the issues raised are now ripe for adjudication. For the reasons that follow, the court adopts the M&R in full, and denies defendant's motion to suppress.

## STATEMENT OF THE CASE

On September 9, 2010, a grand jury returned a three-count indictment charging defendant with possession with the intent to distribute a quantity of cocaine base (*i.e.*, crack), a quantity of marijuana, and a quantity of 3,4-methylenedioxymethamphetamine (*i.e.*, ecstasy), in violation of 21 U.S.C. § 841(a)(1); use, carrying, or possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and possession of a firearm by a convicted felon, in

violation of 18 U.S.C. §§ 922(g)(1) and 924. These charges stem from evidence discovered during a traffic stop and subsequent search of defendant's vehicle on May 9, 2010.

On January 21, 2011, defendant moved to suppress the evidence obtained during the search of his vehicle. Specifically, defendant seeks suppression of a semi-automatic pistol and ammunition, narcotics, cell phones, digital scales, and currency. Defendant also seeks to suppress statements made to law enforcement following the aforementioned search. The government responded in opposition on February 9, 2011. The matter was referred to the magistrate judge, who held an evidentiary hearing on March 2, 2011.

In his M&R issued after hearing, the magistrate judge concluded that there was no constitutional error in the traffic stop and subsequent search. According to the magistrate judge, the traffic stop took no longer than twenty (20) minutes. The magistrate judge found that law enforcement officers had reasonable suspicion of criminal conduct, beyond the tinted-window infraction for which defendant was stopped, which justified a minor prolongation of the police encounter to perform a canine sniff of the vehicle. The magistrate judge further found that the drug detection dog alerted, providing officers with probable cause to conduct a search of the vehicle. On May 18, 2011, defendant filed objections to the M&R. The government timely responded.

## STATEMENT OF THE FACTS

After a careful review of the record in this case, the court adopts the magistrate judge's findings of fact, benefitted by evidentiary hearing, which are set forth below.[1]

---

[1] Defendant objects to many of the following factual findings, particularly the magistrate judge's finding that defendant became nervous and began avoiding eye contact, that Tazer alerted to the presence of narcotics, and that the entire encounter took no more than twenty (20) minutes. (Defendant maintains the episode lasted approximately an hour.) The court has independently reviewed the record in this case, and finds no basis for coming to a different conclusion that the magistrate judge, whose factual findings are consistent with the testimony presented at hearing. Defendant has put forward no evidence to support his objections.

2

Between 9:00 a.m. and 10:00 a.m. on Sunday, 9 May 2010, [Tony] Whitaker [("Whitaker")], a corporal with the Tarboro Police Department, was conducting a random patrol in Tarboro, North Carolina when he was passed by a white sports utility vehicle ("SUV") headed in the opposite direction. Whitaker noticed that the windows of the SUV were tinted and that the tinting appeared to be darker than that allowed by North Carolina law. As a result, Whitaker turned his patrol car around, activated his lights, and conducted a stop of the SUV. When Whitaker approached the driver's side of the vehicle, the defendant, who was in the driver's seat, rolled down his window. After Whitaker explained to defendant why he had been stopped, defendant admitted that he had previously been stopped because of the window tinting and given warnings about it. Defendant was not able to provide Whitaker with any form of identification, but he told the officer his name was Eugene Daniels. Whitaker was unable to verify the identity of defendant at any time during the stop through the North Carolina Division of Motor Vehicles ("DMV") system because it was temporarily unavailable, as it often is on Sunday mornings.

During the stop, Whitaker noted that defendant first appeared calm but then became increasingly nervous and began avoiding eye contact. Because of defendant's nervous behavior and the need to investigate defendant's identity, Whitaker asked defendant if he would come back to the patrol vehicle, and defendant agreed to do so voluntarily.

Whitaker then radioed for a tint specialist to come and measure the tint of the SUV's windows. Officer Bennett ("Bennett") responded, arriving within a couple of minutes with a light meter. Upon measurement, he found the window tint to be in violation. After the tinting was measured, Whitaker spoke with defendant again and noticed that defendant's behavior was more suspicious and nervous, his hands were sweating heavily and appeared "watery," his breathing was faster, and he still would not make eye contact. Whitaker then asked defendant if he had anything illegal in the vehicle, and defendant stated that he did not. Whitaker asked defendant if he would consent to a search of the vehicle, and defendant stated that he could not consent to a search because the vehicle was not his.

Because of defendant's suspicious behavior, Whitaker next called [Michael] Trevathan [("Trevathan")], an officer with the Tarboro Police Department, to conduct a canine sniff of the SUV. Trevathan arrived at the scene within two minutes.

Trevathan arrived at the location of the traffic stop with the narcotics detection dog "Tazer," a German Shepherd, with whom Trevathan had worked for a little over three years. After Whitaker briefed Trevathan on the situation, Trevathan brought Tazer to the driver's side of the SUV and gave him the command to search for narcotics. Tazer started at the front driver's side bumper and proceeded around the exterior of the vehicle in a counterclockwise direction. Tazer alerted for the presence of drugs

at the driver's side door by heavy sniffing around the seams of the door, climbing up on the door, and increased body movement and heavy sniffing inside the open window. Trevathan then pulled Tazer down from the door and had him search the remainder of the vehicle's exterior. Tazer gave a second alert at the front passenger side door. Trevathan notified Whitaker that Tazer's alert indicated the presence of narcotics in the vehicle.

Trevathan then opened the rear passenger door and allowed Tazer to begin a search of the interior of the vehicle. No search warrant was obtained prior to the search. Tazer started in the back passenger trunk area of the SUV and worked his way to the front of the vehicle. As Tazer approached the front passenger area, he began exhibiting behavior consistent with his detection of narcotics, including a "head snap" indicating that he had detected the odor of narcotics and fast body movements as he worked the scent trail. Tazer then put his head under the driver's seat and retrieved a clear plastic bag that appeared to contain marijuana, crack, and pills. A .25 caliber handgun, two cellular phones, and two digital scales were also found under the driver's seat. Trevathan was on the scene with Tazer for approximately 10 minutes, which includes the time for the initial briefing with Whitaker and 2 to 3 minutes for the exterior sniff.

Based on the results of the search, defendant was placed under arrest. A search of defendant's person recovered $705.00 in cash. Defendant was transported to the Tarboro Police Department. The entire encounter starting with the traffic stop and ending with defendant's arrest lasted approximately 15 to 20 minutes.

After arriving with defendant at the police department, Whitaker advised defendant of his Miranda rights, and defendant admitted that his named was Eli Stafford, not Eugene Daniels. Defendant also stated that he had several outstanding warrants, which Whitaker was able to confirm.

Also after the stop, Whitaker spoke with the owner of the SUV. She indicated that she knew defendant by the same alias of Eugene Daniels defendant had given Whitaker.

M&R [DE # 32] at 2-6 (internal citations and footnotes omitted).

## DISCUSSION

A. Standard of Review

The district court reviews *de novo* only those portions of a magistrate judge's M&R to which objections are filed. 28 U.S.C. § 636(b). Absent a timely objection, the court reviews only for "clear

4

error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

B.  Analysis

The magistrate judge's analysis involved a straightforward application of black letter Supreme Court and Fourth Circuit law. He correctly noted that officers with probable cause to search an automobile may do so without first obtaining a warrant. See Maryland v. Dyson, 527 U.S. 465, 466-67 (1999) (per curiam); United States v. Kelly, 592 F.3d 586, 589-90 (4th Cir. 2010). Additionally, the magistrate judge correctly stated that a positive alert from a drug detection dog is sufficient, without more, to provide the necessary probable cause to initiate an automobile search. See United States v. Branch, 537 F.3d 328, 340 n.2 (4th Cir. 2008). Once Tazer alerted to the presence of narcotics in the vehicle, officers required no warrant to search "every part of the vehicle and its contents that may [have] conceal[ed] the object of the search." Kelly, 592 F.3d at 590 (quoting United States v. Ross, 456 U.S. 798, 825 (1982)).

Defendant's citation in his objection to Arizona v. Gant, 556 U.S. ----, 129 S. Ct. 1710 (2009), is misplaced. In Gant, the Supreme Court held that "police [may] search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Id. at 1719. The search in this case, however, was not one performed for officer safety following arrest, but rather was performed prior to arrest based upon probable cause provided by a canine alert to narcotics. These two species of searches "are governed by entirely separate principles," see United States v. Han, 74 F.3d 537, 542 n.2 (4th Cir.

5

Case 4:10-cr-00075-FL   Document 41   Filed 06/09/11   Page 5 of 7

1996), and the requirements described in Gant need not have been satisfied by officers here.[2] In fact, the Supreme Court has expressly held that there is no "exigency requirement" before law enforcement officers may perform a warrantless automobile search founded upon probable cause that the automobile contains contraband. See Dyson, 527 U.S. at 466-67.

The magistrate judge was also correct to conclude that there was no constitutional infirmity in the use of a drug detection dog on the facts presented here. It is undisputed that officers were justified in initiating the traffic stop on probable cause to believe that defendant's windows were too heavily tinted, in violation of North Carolina law. See Whren v. United States, 517 U.S. 806, 810 (1996). Defendant's demeanor during the stop, including his sweaty hands and evasive behavior, provided reasonable suspicion of criminal conduct, which justified prolonging the traffic stop.[3] See Branch, 537 F.3d at 336 (holding that a police officer may detain a driver beyond the scope of a routine traffic stop if there is reasonable suspicion that illegal activity is afoot); see also Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion."). The use of a drug detection dog to dispel or confirm that suspicion is constitutionally acceptable. See United States v. Mason, 628 F.3d 123, 130 (4th Cir. 2010) (holding that a police officer with reasonable suspicion of drug activity is justified in extending a traffic stop for a brief period of time to perform a canine sniff).

---

[2] Similarly, United States v. Lingenfelter, 997 F.2d 637 (9th Cir. 1993), a case cited by defendant which involved a canine sniff of a building, has no application to the facts of this case.

[3] The court assumes without deciding that the stop was prolonged by the canine sniff. As the magistrate judge noted, a routine traffic stop may last between fifteen (15) to twenty (20) minutes where, as here, a defendant lacks proper identification or provides false information, such that officers are unable immediately to verify his identity. See Branch, 537 F.3d at 336 ("[I]f the driver obstructs the police officer's efforts in any way – for example, by providing inaccurate information – a longer traffic stop would not be unreasonable."). Accordingly, it is plausible that the traffic stop was not prolonged by the use of Tazer, but rather by defendant's lack of identification and his provision of a fake name. Nevertheless, the court also agrees with the magistrate judge that it is more expedient in this case to address the constitutionality of the stop under the assumption that it was prolonged.

In short, police officers had probable cause to initiate a traffic stop based on a suspect window-tinting violation, had reasonable suspicion of additional criminal activity due to defendant's nervous and evasive demeanor, and had probable cause to search defendant's vehicle without a warrant after a drug detection dog alerted. As such, the search of defendant's car did not violate the Fourth Amendment. Moreover, defendant identifies no separate Fifth Amendment error that would allow for suppression of his subsequent statements, which were given at the police station after defendant had been read his <u>Miranda</u> rights. As such, his motion to suppress must be denied.

## CONCLUSION

For the foregoing reasons, and upon *de novo* review of defendant's objections to the M&R, the court hereby ADOPTS the findings and recommendation of the magistrate judge (DE # 32) in full. Accordingly, defendant's motion to suppress (DE #21) is DENIED.

SO ORDERED, this the 7th day of June, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge