IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:10-CR-75-FL-1
NO. 4:14-CV-193-FL

| | |
|---|---|
| ELI STAFFORD, | ) |
| | ) |
| Petitioner | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| | ) |

This matter is before the court on petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (DE 106), and the government's motion to dismiss (DE 117). Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge Kimberly A. Swank entered a memorandum and recommendation ("M&R") (DE 128), wherein it is recommended that the court deny petitioner's § 2255 motion and grant respondent's motion to dismiss. Petitioner timely filed objections to the M&R, as well as three motions for leave to amend his 2255 motion (DE 130, 131, and 132). In this posture, the issues raised are ripe for ruling. For the reasons stated herein, the court grants petitioner's motions to amend, adopts the recommendation of the M&R, denies petitioner's 2255 motions, and grants respondent's motion to dismiss.

**BACKGROUND**

Petitioner was found guilty following a jury trial of possession with intent to distribute crack cocaine, marijuana, and ecstasy, in violation of 21 U.S.C. § 841(a)(1) and 851; use and carrying of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A);

and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 924. The court sentenced petitioner on April 4, 2012, to a total term of imprisonment of 420 months. Petitioner appealed and the court of appeals affirmed the judgment on March 15, 2013.

Petitioner filed the instant motion to vacate on October 7, 2014, asserting the following claims:

(1) at the time of petitioner's arrest, law enforcement officers performed an illegal search and seizure in violation of the Fourth Amendment;

(2) petitioner was denied his right to a speedy trial;

(3) petitioner's trial counsel was ineffective;

(4) law enforcement officers intentionally concealed dash-cam video, which would have constituted exculpatory evidence;

(5) petitioner was denied due process when the district judge failed to inquire whether petitioner "affirmed or denied" predicate drug offenses;

(6) the prosecutor committed misconduct during the trial;

(7) the evidence was insufficient to support a finding that petitioner exercised dominion and control over the firearm;

(8) the district judge committed judicial misconduct in her instructions to the jury;

(9) petitioner was not afforded the opportunity to invoke his right to counsel at his initial appearance;

(10) petitioner was not advised of his Miranda rights before a custodial interrogation; and

(11) petitioner's appellate counsel was ineffective.

2

The government filed the instant motion to dismiss for failure to state a claim on February 4, 2015. The magistrate judge entered M&R on November 20, 2015. On December 7, 2015, petitioner filed an objection to the M&R, along with the instant motion for leave to amend his motion to vacate. In his motion to amend, petitioner seeks to withdraw claims 1-2 and 5-11, leaving claims 3 and 4 for consideration by the court. With respect to claims 3 and 4, petitioner seeks to supplement his claims with additional legal and factual contentions and evidence.

Petitioner filed the second instant motion for leave to amend on February 19, 2016, seeking again to add additional legal and factual contentions and evidence, with respect to claims 3 and 4. Petitioner filed the instant third motion for leave to amend on April 1, 2016, seeking again to add additional legal and factual contentions and evidence, with respect to claims 3 and 4.

**COURT'S DISCUSSION**

A.   Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

3

A petitioner seeking relief pursuant to 28 U.S.C. § 2255 must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions, or the [§ 2255 Rules], may be applied to" § 2255 proceedings. Rules Governing Section 2255 Proceedings, Rule 12.

B.   Analysis

   1.   Motions to Amend

Where petitioner moves to add additional legal and factual contentions and evidence pertaining to claims 3 and 4, and where petitioner's additions relate back to his original claims, the court finds good cause to allow petitioner's motions to amend. Therefore, the court GRANTS petitioner's motions to amend, and the court will consider all the materials submitted with the motions to amend together in evaluating petitioner's claims.[1]

   2.   Ineffective Assistance of Counsel

In petitioner's third claim, petitioner contends that his trial counsel was ineffective in failing to investigate and challenge sufficiently in suppression proceedings a canine alert advanced by the

---

[1] In addition, where petitioner has withdrawn the remaining claims in his amendments, and not otherwise advanced objections as to the disposition of such claims in the M&R, the court adopts and incorporates herein by reference the analysis of the M&R of such claims.

4

government as a basis for a search for drugs. Petitioner also contends that his trial counsel was ineffective in failing to investigate a police video of the traffic stop leading to petitioner's arrest.

A successful claim for ineffective assistance of counsel requires petitioner to show that "(1) his counsel's performance fell below an objective standard of reasonableness in light of the prevailing professional norms, and (2) 'there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Bell v. Evatt, 72 F.3d 421, 427 (4th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)).

Where defense counsel's "failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986) (emphasis added). Thus, "the prejudice prong in such cases has two distinct components, with the petitioner required to show both (1) that the motion was meritorious and likely would have been granted, and (2) a reasonable probability that granting the motion would have affected the outcome of his trial." Grueninger v. Dir., Virginia Dep't of Corr., 813 F.3d 517, 525 (4th Cir. 2016) (emphasis added).

   a. Canine Alert

Petitioner's claim of ineffective assistance of counsel fails because he has failed to show that the motion to suppress likely would have been granted had his attorney raised the arguments and evidence regarding the canine alert that petitioner now asserts. Petitioner submits two categories of evidence that he contends counsel should have discovered and put forward in support of the suppression motion: (1) training records for the dog, "Tazer," that police used to conduct an exterior

5

sniff of the car that petitioner was driving, and (2) records of Tazer's police dog certifications. Petitioner claims that such records could have been used to show that Tazer was not reliable and did not make a valid alert to drugs sufficient to provide probable cause for the interior search of the car in which drugs were located.

"[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." Florida v. Harris, 133 S. Ct. 1050, 1057 (2013). "If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." Id. "If . . . the defendant has challenged the State's case (by disputing the reliability of the dog overall or of a particular alert), then the court should weigh the competing evidence." Id. at 1058. "The question – similar to every inquiry into probable cause – is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." Id.

Here, as summarized in the magistrate judge's memorandum and recommendation on defendant's motion to suppress, the government introduced significant evidence both of the reliability of Tazer and the reliability of the particular alert on the date in question, May 9, 2010.

> Contrary to defendant's contention, the record establishes that Tazer did alert for narcotics during the exterior sniff of the SUV. . . . [H]e exhibited heavy sniffing around the seams of both the front driver's side and front passenger side doors, climbing on the doors, increased body movement, and heavy sniffing inside the open windows. (Tr. 32:2 to 33:5; 33:23 to 34:9; 38: 11-16; 41 :7-14). At the front passenger door, Tazer also barked and actually attempted to jump into the window before [officer] Trevathan pulled him down to prevent damage to the vehicle. (Tr. 34:3-9; 42:2-4). [Officer] Trevathan testified that this conduct by Tazer constituted an alert to narcotics inside the SUV. (Tr. 32:24-33:5; 33:12-14; 33:23-34:9; 38:11-16; 42:21-43:9).

6

> The record further demonstrates Trevathan's competence to render this opinion. He testified that he has worked with Tazer for more than three years. (Tr. 45:4-8). He explained that each dog has its own individual way of alerting, but that, generally, a dog alerts through a body movement or other behavior that it would not normally exhibit. (Tr. 44:9-13). Recognizing an alert of a particular dog requires knowledge of that dog. (Tr. 44:21-24). He explained that Tazer is an "aggressive alert dog," that alerts via a variety of behaviors, often starting with increased body movement, tail wagging, and whole body movement, that is followed by scratching, biting, barking, jumping up, or other behavior that might indicate that the dog is attempting to get closer to the narcotics he has detected. (Tr. 32: 19-23; 42:2 to 43 :9; 44: 13-17). Trevathan noted that an alert can be anyone or a combination of these behaviors. (Tr. 32:20-23; 42:2 to 43 :9; 44: 17). The behavior Tazer demonstrated during the sniff of the SUV is consistent with this description of the manner in which Tazer alerts.
>
> The record also addresses Tazer's reliability. Trevathan testified that Tazer had been accurate in the past. (Tr. 45:7-8). . . . Trevathan answered the questions put to him forthrightly and without evasion, and he gave every indication of recounting facts as he recalled them, not advocating for one side or the other.

(M&R DE 32 at 8-9).

Defendant suggests that the evidence he now has submitted, if presented effectively by his attorney, would have overcome this showing. The court disagrees. Indeed, the evidence presented, taken together with all the facts surrounding the dog's training and alert, provides a more complete picture of the circumstances, giving the court further confidence in the result on the motion to suppress. For example defendant points to training logs for Tazer, which include statements that in training Tazer did not alert on the exterior to a vehicle when drugs were hidden inside. (See, e.g., DE 132-4). Defendant, however, misses the forest through the trees.

The training logs evidence substantial, detailed, progressive training of Tazer in multiple varied circumstances, carefully documented in the logs, dated June, July, September, October, and November 2007, over three years prior to the date of the search in the instant case. (Id. at 1-7). The logs do not show a pattern of failure, but rather a pattern of developing skills as might be expected in a training log. (See id.). Moreover, the training logs culminate chronologically with an April

7

2008 "Certificate of Certification" that states that Officer Trevathan and Tazer "have been tested under the standards as set forth by the United States Police Canine Association, Inc., and <u>have achieved the desired rating of excellence therein</u>." (DE 132-3) (emphasis added).

As noted above, "[i]f a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." <u>Harris</u>, 133 S. Ct. at 1057. Petitioner has not offered any conflicting evidence to the Certificate of Completion. Although petitioner criticizes the records as being out of date, petitioner offers no evidence that Tazer lost skills over time. Indeed, in light of officer Trevathan's testimony regarding his long working relationship with Tazer in training and in the field, coupled with the testimony regarding Tazer's performance in the instant search, a contrary inference is compelled.

For the same reasons, the court rejects petitioner's suggestion that further investigation by an expert at the request of defense counsel likely would have led to granting the motion to suppress, where petitioner forecasts no specific evidence that an investigator would have found regarding Tazer to undermine his reliability. Similarly, petitioner's own affidavit stating in his lay opinion that Tazer "did not render any physical reaction that could be considered a change of behavior or 'alert'" (DE 132-1), is insufficient to counter the testimony of officer Trevethan, who had trained with Tazer, was certified in 2008, and had worked with Tazer for several years before the instant search.

In sum, considering all the circumstances, defendant's evidence and arguments regarding Tazer's training and certification are not sufficient to undermine the reliability of the alert in this case. Therefore, petitioner has not established prejudice necessary to support a claim of ineffective

8

assistance of counsel based on counsel's failure to sufficiently challenge the police dog search in this case.

        b.      Police Video

Petitioner likewise has not established prejudice on the basis of counsel's failure to further investigate into a police video of the traffic stop leading to petitioner's arrest. Petitioner suggests that a video or audio recording of the arrest, if obtained by counsel, probably would have changed the outcome at the suppression hearing or trial. As an initial matter, however, petitioner has not shown any evidence of the contents of the video or audio recording of the arrest. As such, his assertion that it would have "contradicted the officers['] versions of events" (DE 131 at 12) is speculative.

In addition, petitioner has not demonstrated that counsel could have obtained a video or audio recording if one had been requested. Defense counsel questioned officer Whitaker, the arresting officer, at the suppression hearing regarding the existence of a police video of the traffic stop, and officer Whitaker stated that the video had been destroyed. (Suppression Hrg. Tr. at 18). Officer Whitaker explained that the video "tape was a VHS system, and when they upgraded from there, . . . they get rid of the old tapes from that." (Suppression Hrg. Tr. at 18). Defense counsel on the record made a request for any video tapes from the government, and officer Whitaker affirmed that he would try to locate them and provide them to the defense. (Id. at 19). Later in the hearing, however, counsel for the government stated: "I'm going to state for the record having reviewed all the materials in the Tarboro Police Department, the department is unaware of the existence of any videotape." (Id. at 49).

9

At trial, defense counsel again cross-examined officer Whitaker regarding the camera on his patrol car. Officer Whitaker stated that the vehicle stop "was being recorded at the time on my camera," but since that time his partrol car "went to another system" and the data was lost in that transition. (Trial Tr. 85). He stated: "I had the old system with the VHS and I was unable to get that information from the camera from that stop." (Id.). He said, "on my system now I don't have the same system I had a year and a half ago. All of that camera and video footage is just, like I said, it wasn't there anymore because they had upgraded." (Id. at 86).

In sum, petitioner's trial counsel already explored the circumstances of the destruction of the police video at the suppression hearing and trial. Petitioner thus has failed to establish that further investigation or questioning thereon would have resulted in production of a video or a different outcome at suppression hearing or trial.

Petitioner suggests, nonetheless, that defense counsel was ineffective in failing to further investigate the circumstances of the lost police video, in order to demonstrate that testimony by officer Whitaker was false, and that government counsel also had concealed the existence of video footage. In support of this argument, petitioner points to a November 26, 2014, letter from the Tarboro Police Department to petitioner, which petitioner contends shows that officer Whitaker gave false testimony regarding destruction of the video. The evidence offered, however, does not support this contention.

The November 26, 2014, letter states that three camera systems were "installed in police vehicles between January 1, 2010 and January 1, 2012":

Digital Ally model number DVM500
Kustom Signals ION Eclipse
Kustom Signals Eyewitness VHS

(DE 132-8). The letter then states:

> These three systems were utilized by the police department during the time period listed. While we do not have exact lists concerning which type of camera was installed in each vehicle, it should be noted that the Kustom Signals Eyewitness VHS systems was the oldest operational unit <u>and there were only two in use at the time</u>. Next, the Kustom Signals ION Eclipse is a newer digital version of the Kustom Signals Eyewitness VHS and <u>there were a few in use during this particular two year period</u>. Lastly, the majority of the vehicles were equipped with Digital Ally DVM500. The year is not applicable to any of these systems.

(DE 132-8) (emphasis added). The letter continues:

> Once purchased, the only upgrades added to the vehicles involved emergency equipment such as lighting, siren control box, mobile data terminals, etc. There were no upgrades to the intact vehicle itself. In other words, there was nothing added or taken away from the vehicles that would enhance or alter their operation. <u>Similarly there were no upgrades to the camera systems</u>. Each camera system was purchased and installed as a package. Once completed, there was nothing added to them that would alter or enhance their functionality.

(<u>Id.</u>) (emphasis added).

As an initial matter, the letter does not state that video recordings in officer Whitaker's police cruiser remain in police custody. Thus, the letter on its face does not demonstrate that officer Whitaker's testimony about destruction of the police video was false.

Petitioner contends nonetheless that the last emphasized text that "there were no upgrades" suggests that officer Whitaker's testimony at suppression hearing and trial was false, and that the government concealed the existence of a video recording of the traffic stop. The testimony and letter in context reasonably do not permit such an inference. Considered in context, officer Whitaker and the letter use the term "upgrade" in different respects, and their respective descriptions of the status of patrol car cameras are consistent. Officer Whitaker refers to the camera system having been "upgrade[d]," in the sense that the entire system was replaced by a newer system. (<u>See</u> Trial Tr. 85 (stating his patrol car "went to another system"); 86 (stating his camera had been "upgraded")).

11

By contrast, the letter suggests that once a camera system was installed there were no "upgrades" to that installed camera system, in the sense of a revision to that particular system. (See DE 132-8). This does not rule out the complete replacement of an older system, such as officer Whitaker described in his testimony. (See Tr. Tr. 85-86). Indeed, the letter suggests that over time the police department progressively acquired newer, digital, systems in place of the older VHS systems. (See DE 132-8) Those systems were installed "as a package" and, "[o]nce completed, there was nothing added to them that would alter or enchance their functionality." (Id.).

In sum, the November 26, 2014, letter does not show that officer Whitaker testified falsely regarding the loss of VHS recordings from his particular vehicle, nor that the government concealed evidence from the defense. In the alternative, even assuming the information in the November 26, 2014, letter, could have provided an avenue for further investigation, petitioner has not demonstrated a reasonable probability that such further inquiry would have resulted in a different outcome at the suppression hearing or at the trial. Therefore, petitioner has not demonstrated prejudice from trial counsel's alleged failure to further investigate into the circumstances regarding the destruction of the police video.

Accordingly, petitioner's ineffective assistance of counsel claim must be denied.

3.  Loss of Video Recording

In his fourth claim, petitioner asserts that his due process rights were violated at trial because officer Whitaker concealed the video recording of his traffic stop, and the prosecution encouraged or knew of officer Whitaker's false testimony in this regard. The magistrate judge determined that the claim was procedurally defaulted, and petitioner has not shown cause and prejudice for the default. In support of his objections and amendments to his § 2255 motion, petitioner asserts that

ineffective assistance of counsel constitutes cause for the procedural default. For the reasons stated in section B.2.b of this order, above, petitioner has not demonstrated ineffective assistance of counsel. Therefore, this claim must be dismissed on the basis that it is procedurally defaulted.

In addition, the claim is without merit. To establish a constitutional violation based upon evidence that has been destroyed, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v. Trombetta, 467 U.S. 479, 489 (1984). Under this standard, the failure to preserve evidence "of which no more can be said than that it could have been [examined], the results of which might have exonerated the defendant" does not violate due process. See Arizona v. Youngblood, 488 U.S. 51, 57–58 (1988). Therefore, "unless a criminal defendant can show bad faith on the part of the [government], failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 58; see Illinois v. Fisher, 540 U.S. 544, 547–48 (2004) (per curiam).

Bad faith "must necessarily turn on the [government's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." Youngblood, 488 U.S. at 56 n.*; Holdren v. Legursky, 16 F.3d 57, 60 (4th Cir.1994). Mere negligence in failing to preserve potentially exculpatory evidence does not constitute bad faith. See Elmore v. Ozmint, 661 F.3d 783, 831 (4th Cir.2011); see also United States v. Thompson, 584 F. App'x 101, 103 (4th Cir. 2014).

Here, petitioner has failed to show bad faith on the part of the government. The police department's failure to preserve the video was subject of cross-examination of officer Whitaker at the suppression hearing and at trial. (See Suppression Tr. 17-19; Trial Tr. 84-86). In addition, the circumstances of the arrest were subject of testimony by the passenger of the vehicle involved in the

13

stop, who testified regarding the circumstances of the arrest in a manner consistent with the testimony of the arresting officers. (See Trial Tr. at 183-188). There is thus nothing to suggest that the destroyed video had an exculpatory value, or that the arresting officers destroyed the video in bad faith.

Petitioner argues, nonetheless, that he has demonstrated bad faith because officer Whitaker offered false testimony regarding the destruction of the video and the prosecution encouraged or knew of the falsity of the testimony. As set forth above, in section B.2.b, petitioner has not demonstrated that officer Whitaker offered false testimony. The evidence submitted by petitioner, considered along with officer Whitaker's testimony, tends to show that the video was inadvertently destroyed as part of installation of new camera systems in officer Whitaker's patrol car. Therefore, the premise of petitioner's argument as to bad faith is flawed.

In sum, petitioner's fourth claim is procedurally defaulted. In addition, the record does not suggest that the actions of the police that led to the destruction of the video were undertaken in bad faith. Accordingly, petitioner's fourth claim also is without merit.

C.      Certificate of Appealability

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must demonstrate that reasonable jurists could debate whether the issues presented should have been decided differently or that they are adequate to deserve encouragement to proceed further. Miller–El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000). After reviewing the claims presented on collateral review in light of the applicable standard, the court finds that a certificate of appealability is not warranted.

## CONCLUSION

Based on the foregoing, upon de novo review of the portions of the M&R to which specific objections were raised, and considered review of those portions to which no such objections were made, the court ADOPTS the recommendation of the magistrate judge. Petitioner's motions to amend (DE 130, 131, and 132) are GRANTED. The government's motion to dismiss (DE 117) is GRANTED. Petitioner's motion to vacate, set aside, or correct his sentence (DE 106) is DENIED. A certificate of appealability is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 10th day of May, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge